```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


THE WORLD WIDE STREET            :
PREACHERS' FELLOWSHIP, et al.,
         Plaintiff               :

                                 :
         vs.                          CIVIL NO. 1:CV-04-1127
                                 :

                                 :
STEPHEN R. REED, et al.,
         Defendants              :
```

*M E M O R A N D U M*

I.   *Introduction.*

   The plaintiffs are the World Wide Street Preachers' Fellowship, a ministerial fellowship of Christian street preachers, and James Grove, a street preacher and member of the fellowship.  Plaintiffs filed this civil rights action alleging their First Amendment rights were violated in July 2003 during PrideFest, an annual event held in Harrisburg, Pennsylvania.

   They named as defendants Stephen R. Reed, the Mayor of Harrisburg, in his official capacity; Tina Manoogian-King, Harrisburg's Director of Parks and Recreation, in her official and individual capacities; Thomas Carter, a corporal with the Harrisburg Police Department, in his official and individual capacities; and Stephanie Barrelet, an officer with the police department, in her official and individual capacities.

   We are considering the plaintiffs' request for permanent injunctive relief that would bar the city from

enforcing: (1) a fifty-foot buffer zone around the area for the festival; and (2) the decision of the PrideFest organizers to exclude street preachers from an area that, while it was within the area permitted for the festival, was not being used by the festival.[1]

II.   *Factual Background*.

   A.   *The Permitted Area*.

   The evidence at trial supports the following findings. Riverfront Park is a public park in the City of Harrisburg that runs in a north-south direction between the Susquehanna River on the west and Front Street on the east. The PrideFest organizers obtained a permit from the city's Department of Parks and Recreation to hold the PrideFest on July 26, 2003, at the southern end of the park. The festival was held between noon and 7:00 p.m.

   As enforced by the city, a permit gives the holder the exclusive use of the permitted area while the permit is in effect, although there is nothing on the face of a permit indicating the use is exclusive. The city will also exclude

---

[1] Plaintiff Grove had an individual claim against Manoogian-King, Carter and Barrelet that he was arrested for disorderly conduct and defiant trespass in retaliation for the exercise of his First Amendment rights. In December 2005, that claim was tried separately to a jury, which awarded him one dollar in nominal damages against defendants Carter and Barrelet.

2

persons from the permitted area at the request of the permit holder, for no reason or for any reason, even if based on the permit holder's objection to the content of the person's speech.[2]

The permitted area of the park was roughly shaped like a narrow rectangle. The permitted area's width was the western curb line of Front Street to the top of the river's embankment. Beginning from the south, its length started at a spot underneath a railroad bridge close to the three-way intersection of Front, Vine and Paxton Streets and ran north to Market Street.

At the request of the event organizers, the city enclosed a portion of the permitted area with an orange-colored, plastic, mesh fence. There were two entrances to the enclosed area, the South Gate, underneath the railroad bridge at the south end of the permitted area, and the North Gate. The North Gate was about midway between the southern end of the permitted area and the northern end of the permitted area at Market Street. The fence ran from the South Gate north along the western curb line of Front Street to the North Gate.

Roughly half, if not slightly more, of the permitted area was enclosed. Events at the festival were held in this

---

[2] We upheld the latter course of conduct against a First Amendment challenge in a previous street-preachers case involving PrideFest. *See Diener v. Reed*, 232 F. Supp. 2d 362, 380 (M.D. Pa. 2002), *aff'd*, 77 Fed. Appx. 601 (3d Cir. 2003) (nonprecedential).

area and an admission fee was charged to enter.  There was no admission fee for the unfenced area to the north, between North Gate and Market Street.  Park Director Manoogian-King testified that there was an "area of reflection" in the unfenced area, toward Market Street, where rainbow-colored flags contained the names of persons who had passed on or some other message.  She saw people sitting on park benches or on the grass mourning or meditating.  She could not say how far this area of reflection was from the North Gate.

>    B.   *The Street Preachers' Attempt to Use the*
>         *Unfenced Portion of the Permitted Area.*

Michael A. Marcavage came to an area of the park very close to the North Gate, if not the North Gate itself.  This area was within that portion of the permitted area that was unfenced.  Marcavage expressed a desire to the police officers there that he wanted to talk to the people approaching the festival through the North Gate.  Marcavage is a Christian evangelist who travels to events like PrideFest to talk, or preach, to attendees concerning his belief about the immorality of homosexual conduct.

No festival events were taking place in this unfenced area, and from where Marcavage was standing, music from the festival could be heard. He was told that he had to go across Front Street or north to Market Street if he wished to engage in First Amendment activities, that under the court case that the

4

city won,[3] the permit holders had the exclusive right to use the permitted area and could exclude anyone they chose.  One of the event organizers was found and told Marcavage he did not want him in the permitted area.  Earlier Marcavage had been told that if he did not follow the directions of the event organizers, he would be arrested.  Marcavage left.  Plaintiff Grove had been with him and also left.

    C.   *The Fifty-Foot Buffer Zone.*

After assessing the risk and manpower needs of special events like PrideFest, the Chief of Police issues special orders for each event.  The special order he issued for PrideFest did establish a fifty-foot buffer zone separating the street preachers from the permitted area.  Additionally, neither Manoogian-King nor Barrelet enforced a fifty-foot buffer zone.  However, at one point during the festival, defendant Carter did enforce a fifty-foot buffer zone near the South Gate, directing the Christian protesters to keep back fifty feet from the permitted area.

---

[3]   An obvious reference to *Diener, supra*, footnote 2 above.

III.  *Discussion*.

    A.  *Exclusion From the Permitted Area That Had Been Left Unfenced*.

Citing *Gathright v. City of Portland*, 439 F.3d 573 (9th Cir. 2006), and *Parks v. City of Columbus*, 395 F.3d 643 (6th Cir. 2005), Plaintiffs argue that the First Amendment protects their right to engage in expressive activity in the unfenced portion of the permitted area. In support, they rely on the fact that this portion of the permitted area was "unrestricted," meaning that there was no charge to enter it and it was open to the general public. They also emphasize that the permit failed to specify that the event would be exclusive. Further, they argue that this portion of the permitted area was "unused," meaning that no festival events were taking place there. In opposition, Defendants contend that the unfenced area was nonetheless part of the permitted area and that under *Diener, supra,* the event organizers could exclude anyone from the area of the permit granted for PrideFest.

Defendants' reliance on *Diener*, *supra*, is misplaced. In *Diener*, we upheld Harrisburg's application of its permitting ordinance giving the permit holder the authority to decide who may be allowed into the permitted area, even if based on the content of the person's speech, but we did so because we decided that the permit holder's decision to admit or exclude was not

state action. 232 F. Supp. 2d at 380-81.[4] We also buttressed this conclusion by noting that a contrary ruling would interfere with the permit holder's use of the parkland for the purpose the permit was obtained. 232 F. Supp. 2d at 382.

*Diener* is thus distinguishable because it did not confront the issue of a permitted area that was larger than the area that was used to hold the festival. That issue is present in the instant case, where at least half of the permitted area was not being used for festival events, the area of Riverfront Park that had been left unfenced north of the North Gate, where many attendees entered the festival. This unfenced area did contain an "area of reflection," but this area was closer to Market Street than to the North Gate. Street preachers near the North Gate attempting to engage attendees approaching the gate, would not have interfered with this area of reflection, certainly no more than the music that could be heard coming from the festival at the North Gate. Thus, *Diener* does not control here because the street preachers' presence in an area (albeit part of the permitted area) where festival events were not taking place was not interfering with the festival.

---

[4] Contrary to Defendants' contention, we did not rely on *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston,* 515 U.S. 557, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995), and *Sistrunk v. City of Strongsville*, 99 F.3d 194 (6th Cir. 1996). The Third Circuit cited those cases in its nonprecedential affirmance. 77 Fed. Appx. at 608.

Aside from *Diener*, Defendants argue that the exclusion of the street preachers from the area between the North Gate and Market Street was not improper for the following reasons. First, the exclusive-use interpretation of the permitting ordinance is a reasonable time, place and manner restriction on expressive activity because it is content-neutral and the street preachers had an alternative channel of communication across Front Street.  We reject this argument because a time, place and manner restriction must also be narrowly tailored, *see Diener, supra*, 232 F. Supp. 2d at 375-76, and the exclusive-use interpretation that would allow persons to be removed even from portions of permitted areas that were not being used for the permitted event is not narrowly tailored to serve the city's interest in ensuring that the permit holder can use the permit for the purpose for which it was obtained.  We also agree with Plaintiffs that a location across the street is not an ample alternative channel of communication when they could have been standing in the park.

Defendants next argue that the city needs the exclusive-use interpretation or it will not be able to ensure the safe and effective use of its parks. We disagree.  The city can still enforce the interpretation for that portion of the permitted area reasonably being used by the festival and can still arrest people when their conduct exceeds activity protected by the First Amendment.  For this same reason, we

8

reject Defendants' contention that the street preachers are attempting to exercise a "heckler's veto" over the PrideFest's organizers' First Amendment rights.  At any time that a protester's conduct goes beyond protected First Amendment activity, a police officer can charge the protester with the appropriate criminal offense.

      B.  *The Fifty-Foot Buffer Zone*.

Corporal Carter was enforcing a purported fifty-foot buffer zone near the South Gate, directing the Christian protesters to keep back fifty feet from the permitted area.  A buffer zone is not per se improper under the First Amendment, but it must be analyzed as a "time place and manner" restriction.  *See, e.g., McGuire v. Reilly*, 386 F.3d 45, 57 (1st Cir. 2004).

Defendants make no attempt to justify the fifty-foot buffer zone, taking the position that no such zone was ever established.  We conclude otherwise and that it violated the First Amendment.

C.  *Remedy*.

Plaintiffs seek a permanent injunction.[5]  Permanent injunctive relief, like preliminary injunctive relief, is an extraordinary remedy.  *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1426-27 (3d Cir. 1994); *Lines v. Wargo*, 271 F. Supp. 2d 649, 664 (W.D. Pa. 2003).  It may be granted when the moving party has satisfied the following conditions: "(1) the exercise of jurisdiction is appropriate; (2) the moving party has actually succeeded on the merits of its claim; and (3) the 'balance of equities' favors granting injunctive relief."  *Chao v. Rothermel*, 327 F.3d 223, 228 (3d Cir. 2003).  The first condition has three subparts.  "The plaintiff must show that: (1) he has no adequate legal remedy; (2) the threatened injury is real, not imagined; and (3) no equitable defenses exist."  *Roe v. Operation Rescue*, 919 F.2d 857, 867 n.8 (3d Cir. 1990); *Arietta v. City of Allentown*, 2004

---

[5]  They seek it in the following form:

> The City of Harrisburg, its agents, employees and assigns are hereby PERMANENTLY ENJOINED from removing members of the public from permitted but unrestricted and nonexclusive events based on their speech or viewpoint.  The City is further PERMANENTLY ENJOINED from enforcing no-speech zones around PrideFest Events.  The Director of Parks and Recreation as well as all police officers for the City of Harrisburg shall be advised of the contents of this order.

(Doc. 103, Pls.' Proposed Findings of Fact and Conclusions of Law, pp. 9-10).

WL 1774623 at *6 (E.D. Pa. Aug. 9, 2004); *Diener, supra*, 232 F. Supp. 2d at 375.

We decline to enter permanent injunctive relief. We do not believe that Plaintiffs have shown a threat that city officials or agents will continue the unconstitutional conduct found in this case. On the exclusion of street preachers from unused portions of permitted areas, the Park Director acted on a not unreasonable interpretation of our decision in *Deiner, supra*, which we are sure will not be repeated. And the buffer zone was only being enforced by one police officer; supervisory officials should be able to ensure that the conduct does not recur.

However, because there were constitutional violations here, we will grant Plaintiffs relief in the form of a declaratory judgment, a milder alternative to an injunction. *See Balgowan v. New Jersey*, 115 F.3d 214, 217-18 (3d Cir. 1997). Accordingly, we will enter an order declaring that the actions of the city's agents in preventing plaintiff James Grove and Michael Marcavage from street-preaching in the areas of Riverfront Park that had been permitted for an event under the city's permit ordinance but which were not being used for the event violated their First Amendment right to free speech. We will also declare that the enforcement of a fifty-foot buffer zone by a city police officer violated the plaintiffs' First Amendment right to free speech.

11

        We will issue an appropriate order.

                                              <u>/s/William W. Caldwell</u>
                                              William W. Caldwell
                                              United States District Judge

Date: May 8, 2006

```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

THE WORLD WIDE STREET         :
PREACHERS' FELLOWSHIP, et al.,
          Plaintiff           :

                              :
          vs.                        CIVIL NO. 1:CV-04-1127
                              :

                              :
STEPHEN R. REED, et al.,
          Defendants          :
```

*O R D E R*

AND NOW, this 8th day of May, 2006, it is ordered that:

    1. After trial of the issues, Plaintiffs' request in their complaint for permanent injunctive relief is denied.

    2. We issue the following declaratory relief:

        (a) the actions of the city's agents in preventing plaintiff James Grove and Michael Marcavage from street-preaching in the areas of Riverfront Park that had been permitted for an event under the city's permit ordinance but which were not being used for the event violated their First Amendment right to free speech.

        (b) the enforcement of a fifty-foot buffer zone by a city police officer at the south end of the permitted area for PrideFest violated the plaintiffs' First Amendment right to free speech.

    3. The Clerk of Court shall close this file.

                                 /s/William W. Caldwell
                                 William W. Caldwell
                                 United States District Judge